THE STATE OF OHIO *v.* PORTER.

[Cite as State v. Porter (1977), 53 Ohio Misc. 25.]

(Nos. 29516-A, 29517, 29520-B, 29521-B, and 29522-A—
Decided January 27, 1977.)

Court of Common Pleas of Cuyahoga County.

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Robert E. Feighan* and *Mr. Robert V. Housel,* for plaintiff.

*Ms. Arlene B. Steuer, Mr. Michael E. Cozza* and *Mr. Dwight A. Miller,* for defendant.

McMonagle, J. This court has been assigned the above-numbered cases, in each of which Albert S. Porter is named as the defendant. The defendant filed a motion to suppress evidence originally in case No. 29516-A. It was indicated by all counsel at the hearing of January 27, 1977, as being applicable to each of the above cases and is so considered by the court. The standing of the defendant to file the said motion is acknowledged. The motion is predicated upon the contention of the defendant that two searches, one on October 29, 1976, and one on November 4, 1976, were invalid, and that the papers and articles seized in those searches should be suppressed.

Hearings on the motion to suppress were held. The first was held on January 27, 1977, and was submitted for

decision by the court on the briefs and arguments of counsel. At the conclusion of the hearing, the court granted the defendant's motion to suppress the evidence procured in the search of October 29, 1976, for the reason stated on the record at that time, and reserved ruling as to the search of November 4, 1976.

The court advised the parties that after he had reviewed certain exhibits that were submitted to him, specifically those numbered 12, 51, 52, 53, 54, 55, 56, 62, 63, 64, 72 and 88, together with the briefs of counsel that if he felt it necessary, he would hold a subsequent hearing and notify the parties. The court decided that a subsequent hearing was proper, and this was held on February 14, 1977.

This memorandum is concerned with the November 4, 1976, search. The defendant contends that the said search, although pursuant to a search warrant, was violative of his rights protected by the Fourth Amendment to the United States Constitution and a similar provision of the Ohio Constitution—Article I, Section 14.

This court considers that the rights protected by the said constitutional provisions to be the most sacred of those in which the writers of the Constitution attempted to provide protection from unwarranted intrusions by governments into the lives, persons, homes, effects, and affairs of the people. The failure to uphold the protection of the Fourth Amendment rights can materially affect other rights constitutionally protected by the Bill of Rights, particularly the First, Fifth, Sixth and Eighth Amendments. It is the law that a constitutionally valid search warrant may not issue unless based upon an affidavit containing certain basic elements and it must be executed by the officer or officers to whom it is directed.

At the hearing with reference to the motion to suppress that was held on February 14, 1977, Rocco M. Pollutro, Detective No. 1939, of the Cleveland Police Department, testified. He testified that he, together with other members of the Cleveland Police Department, were assigned to execute the search warant pertaining to the November 4, 1976, search. He testified that the first knowl-

edge that the police depaartment had, with reference to this matter, was when they were notified by the prosecutor's office of the issuance of the warrant, and the police met prosecutors Housal and Feighan in the lobby of the Standard Building. The defendant's office was located in that building. At that time, they were shown the search warrant and a copy of the affidavit. They were not given a copy of the affidavit, and made only a cursory examination of it. They were, however, given copy of the search warrant and then went to the office of the county engineer. Upon entering the office, they advised the receptionist that they had a search warrant and were admitted into the offices. The witness testified that it was the duty of the police department to execute the warrant, but that they had no idea as to the items for which they were to search, other than being advised that a search was to be made of two safes. The witness also testified that the police did not, in fact, actually participate in a search; that they did not know what was being sought, nor were they aware of what was being taken; that the members of the prosecutor's office went through safes, filing cabinets, desks, and selected what papers or documents they desired; that an inventory was not actually taken by the police officers, but was by the representatives of the prosecutor's office; and that counsel for the defendant were present and that they objected to the search generally, and particularly with reference to its scope; a police officer was present at all times and did initial the inventory as did a representative of the defendant.

It is also the law that if a search warrant is based upon any information other than that contained in the affidavit, such information must be given to the issuing judge under oath and be transcribed, or otherwise reduced to writing, and made a part of the proceedings upon which issuance of the search warrant is predicated. The search warrant under which the November 4, 1976, search was conducted was, from the record, based solely upon an affidavit of Robert V. Housel, an assistant Cuyahoga County prosecutor. The procedures and requirements for the issuance and execution of search warrants are specified in

the said constitutional provisions, the Ohio statutes, and Rule 41 of the Ohio Rules of Criminal Procedure. The constitutional protections apply as well to the criminal as to the law-abiding person. Neither a grand jury, any police officer, or any public official is exempted from compliance with the constitutional, statutory and rule requirements with respect to searches and seizures.

In *State* v. *Clawson* (1962), 118 Ohio App. 535, the Court of Appeals for Montgomery County held:

"1. An affidavit for a search warrant, which alleges that the complainant has good cause to believe that the things to be searched for and seized are concealed on described premises, but which does not allege the offense claimed or state the facts upon which the belief of the complainant is based, as required by Section 2933.23, Revised Code, is illegal and void.

"2. Evidence illegally seized under a void search warrant is inadmissible in a criminal action against the accused."

The opinion is by Judge Joseph D. Kerns who is an outstanding Court of Appeals jurist and has served by assignment on the Supreme Court of Ohio during its consideration of hundreds of cases.

His opinion included the following, at page 539:

"The items taken from the defendant are not inherently endowed with a criminal purpose. In fact, they are not substantially unlike records which might be found in hundreds of offices in the city of Dayton. If they had been legally seized, the city would have been entitled to only the temporary possesion thereof, and that only for evidential purposes. See *Rosanski* v. *State*, 106 Ohio St. 442.

"Applicable here, in our opinion, is the following statement from the case of *Mapp* v. *Ohio, supra* (367 U. S., 643):

" 'However much in a particular case insistence upon observance by law officers of traditional fair procedural requirements may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness.' "

"The judgment will be, and hereby is, reversed and

the records ordered returned to the defendant."

The elementary constitutional requirements of the materials that must be contained in an affidavit in support of a search warrant include the following: it must contain averments of facts from which a judge can believe that probable cause exists that a criminal offense has been, or is being, committed; it must state substantially in the affidavit the offense which it is contended was committed; and the affidavit must particularly describe the place to be searched and particularly include the persons or things to be seized. The averments of the affidavit may be based upon hearsay information but if so, the affidavit must advise the judge of some of the underlying circumstances from which the officer concluded that the informant was "credible" or his information "reliable." The requirement that an affidavit set forth the facts upon which the warrant is requested is not satisfied by averments by an affiant such as, "Affiant further states that *testimony presented to the Grand Jury* and OTHER EVIDENCE IN HIS POSSESSION * * *" (Paragraph 4 *infra*), or, "Affiant further states that based upon evidence in his possession and evidence presented to the Grand Jury, there is reasonable grounds to believe and he does believe that crimes have been committed * * *." (Paragraph 10 *infra*.) (Emphasis added.)

Regardless of other infirmities from which these last statements suffer, the mere fact that a person testifies before a Grand Jury does not clothe his statements with such an aura as to eliminate the requirement of the averments of underlying circumstances from which an officer has concluded that the informant was "credible" or his information "reliable." Unreliable witnesses have appeared before a grand jury and have told incredible stories.

It is elementary that a search warrant may not be issued merely because a grand jury investigation is in process, without complying with the above requirements. Nor may a search be ordered merely because documents are not produced upon issuance of a subpoena. Because a person fails to produce some evidence after being subpoenaed to do so, does not—absent compliance with con-

stitutional requirements—permit a governmental intrusion into his home, office, effects, etc. The law provides sanctions for failure of a witness to obey a subpoena, and they do not include entry into the witness' home, etc. A copy of the affidavit upon which the search warrant for the November 4, 1976, search was based is attached hereto, and the paragraphs are numbered as referred to in this memorandum.

We shall examine the subject affidavit to determine whether it contains any facts upon which a judge can believe that a criminal offense or offenses has been, or is being, committed. Although not so stated in the affidavit, we understand that when the affidavit refers to testimony before the grand jury, the affiant is referring to testimony that he personally heard. In Paragraphs 2 and 3, the affiant refers to filings by the defendant under R. C. 3517.10 without stating with whom said reports were filed; and under R. C. 102.02, he indicates the filing was with the Ohio Ethics Commission. Although the basis for the statements, with reference to such filings, is not stated in the affidavit, the court accepts such statements as referring to public filings, and the contents thereof are as reported in the affidavit. Apparently, the averments of the said paragraphs (2 and 3), together with what is contained in Paragraph 4 (although the latter is predicated solely upon "testimony presented to the Grand Jury and other evidence in his possession"), are supposed to constitute averments of criminal offenses by the defendant. Despite constitutional infirmities which are above described, the court is considering such statements as valid for the purpose of procuring a search warrant. The court necessarily also considers as correctly quoted the statements or admissions by the defendant as heard by the affiant in the Grand Jury room and as reported in his affidavit with respect to bonds he had recovered which are in his possession (Paragraph 6).

There is no basis shown for any of the statements made in Paragraphs 9 and 11.

It is apparent that the prosecutor felt that the statements referred to in Paragraphs 2 and 3 and 4, together

with those in **Paragraph 5,** contain averments from which a court could find that there were violations of R. C. 3517.-10 and/or R. C. 102.02, and that these warranted the issuance of a search warrant for the carrying out of the requested search. Specifically because the defendant stated that he had received no "gift" worth $500.00 or more in 1975 and he had received checks exceeding that sum that they must have been gifts and he had committed a criminal offense by stating he had not received any gifts in excess of $500.

The prosecutor's averments actually consist of the following:

1. The reports of the County Engineer's Committee filed by the defendant listed cash contributions from members for the period of January 1, 1976, through October 13, 1976, in the amount of Fifty One Thousand One Hundred Eight One Dollars and Thirty Seven Cents ($51,-181.37).

2. The defendant filed a Financial Disclosure Statement averring that he received no "gift" worth more than Five Hundred Dollars ($500.00) during the calendar year 1975.

3. Checks drawn upon the "Country Engineer's Committee" to the defendant for 1975 totalled Sixty Thousand Dollars ($60,000.00).

4. The defendant's testimony before the Grand Jury was that he received a check for Ten Thousand Dollars ($10,000.00) in December of 1975 and one for Twenty Thousand Dollars ($20,000.00) in October of 1975 that were for the purpose of, and were used for, purchasing bearer bonds which were then "in the custody of the Treasurer of the Committee."

5. Pursuant to a subpoena and a search, bearer bonds in the face amount of Sixty Thousand Dollars ($60,000.00) and also in the face amount of Eight Thousand Dollars ($8,000.00) had been recovered and were in the possession of the affiant.

The affidavit therefore states that Mr. Porter stated or averred that during 1975 he received no gift worth Five Hundred Dollars ($500) or more but he did receive

checks totalling Sixty Thousand Dollars ($60,000) with which he bought bearer bonds for the committee and Sixty Eight Thousand Dollars ($68,000) of bearer bonds were turned over to the affiant.

The above obviously does not constitute any averments of the commission of a criminal offense warranting the issuance of a search warrant.

The only statement with reference to the location of articles to be seized is contained in Paragraph 8. In Crim. R. 41(C) after specifying requirements for the affidavit and if the judge is satisfied that probable cause for the search exists "he shall issue a warrant *identifying* the property" and the place to be searched. The affidavit requests a "search of any safe or safes to be found in the office of the county engineer."

The law requires that the affidavit "particularly describe the place to be searched" and the "things to be seized." In said Paragraph 8 affiant "states that on October 28, 1976, while assisting in executing a search warrant at the office of County Engineer, he saw, cash, a list captioned—County Engineer's Committee Bonds, *sealed envelopes* with cash and slips of paper therein, and other records and papers all relating to the County Engineer's Committee."

The court has determined that said search of October 28, 1976, was invalid.

Defendant further contends the property seized must be suppressed under the "fruit of the poisonous tree" doctrine because the affidavit indicates that the information upon which affiant bases his right to a search warrant illegally came to his knowledge. This obviously is the fact.

In *Brown* v. *Illinois* (1975), 422 U. S. 590, the court held, at page 599:

" 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection *is made has been come at by exploitation of that illegality* or instead by means sufficiently distin-

guishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959),' *Id.*, at 487-488."

And, in *Brown* v. *Illinois, supra,* in a partially concurring opinion by Justices Powell and Rehnquist, it was stated at page 606:

"The Court recognized in *Wong Sun* v. *United States,* 371 U. S. 471 (1963), that the Fourth Amendment exclusionary rule applies to statements obtained following an illegal arrest just as it does to tangible evidence seized in a similar manner or obtained pursuant to an otherwise illegal search and seizure."

Further, regardless of the procedure by which the alleged information was received, it obviously does not *particularly* describe the place to be searched to be that as allegedly observed and the persons or things to be seized. The warrant authorizes the police to "search forthwith the offices and safes described for the property specified." The affidavit does not mention any *safe* as being the container of alleged evidence nor does a statement by the affiant "at the office of County Engineer, he saw, cash, a list captioned—County Engineer's Committee" comply with the requirement that the place to be searched and the things to be seized be particularly described. An averment that articles were seen in an office cannot be the basis for an order to search a safe or to conduct a general search as apparently was done here and to seize whatever items the parties conducting the search desire to take. The affidavit and warrant are fatally defective in these latter respects.

The prosecutor cites *State* v. *Eichhorn* (1975), 47 Ohio App. 2d 227, as sustaining his contention that the within affidavit is sufficient to warrant the authorizing of the search with the judge drawing reasonable inferences from the acts alleged from which probable cause may be inferred. The *Eichhorn* opinion is sound and the facts alleged in the affidavit authorized an inference that probable cause existed that the defendants therein were in possession of stolen property.

In this action it was not possible for any judge to infer any offense that probably had been committed.

The previously cited evidence of Detective Pollutro clearly indicates that the search in question could be denominated as a general or exploratory search without any identification of the articles to be seized and apparently leaving it up to the whim of the prosecutor as to what he decided while the search was being conducted, he would seize.

This is contrary to law.

The articles that are the subject of the search must be particularly identified and what is to be taken not left to the discretion of the officer conducting the search.

This is a basic rule with reference to the upholding of the Fourth Amendment rights. The court has examined the documents that are itemized in the inventory that was returned pursuant to the search warrant in this case. These include checks in payment of the gas bill, the phone bill, for dentists, doctors, druggists, payment of dues to political organizations and clubs, shorthand notes (which were transcribed by the secretary for the prosecutor), blank envelopes, records of interest payment, Item No. 68 called and referred to as vital statistics, identifying the available cemetery lot, safety deposit boxes, social security numbers, dates of births, etc., bills of florists, copies of communications with newspaper editors re articles of years before, credit charges, charges for air transportation, information for income taxes, communications with counsel, requests for increases by employees, resignation from the club, correspondence and charges with reference to lease of the apartment, stock certificates, checks issued by Mrs. Porter on her account for household expenses, check stubs from 1950 to 1975, list of employees in club in 1971, blank deposit slips of Mr. Porter and Carol Porter, the sum of $4,626 in cash, etc. The execution of the search warrant in each respect is invalid and a contravention of the law.

It is indicated from the affidavit (Paragraph 11) the purpose of the request for and the issuance of the search warrant was to procure "evidence relating to the commission of crime or crimes." The within motion also raises the question as to whether under Ohio law a search warrant may validly be issued solely to procure evidence

relating to the commission of crime or crimes. As previously stated a general or exploratory search is never permitted nor may it be left to the person conducting a search to seek and choose and select such items as he, at the time the search is in progress, decided he wants to take into his possession. The said stated purpose requesting the issuance of a search warrant obviously constitutes requesting that a court make an order permitting an intrusion into the privacy of an individual for the purpose of looking for mere evidence that may possibly be used for the purpose of either establishing that a crime has been committed or that the papers searched for may be used in evidence either to establish an offense or to prove guilt of a person whose effects are being searched.

It is obvious from some of the items that were taken in the search that they could be so considered and used in violation of the Fifth Amendment rights against self incrimination. A search of a person's effects may not be validly made for the purpose of procuring self incriminating papers, etc., nor may such items be taken even when a valid search is being conducted under a properly procured search warrant. If for example a valid search is being conducted for contraband which is specifically identified, self incriminating papers or documents may not be taken in such a search and to do so would be a violation of the Fifth Amendment.

No official is permitted to invade a person's private papers or effects for the purpose of either procuring self incriminating matter in violation of Fifth Amendment nor may an otherwise valid Fourth Amendment intrusion be used as a means of violating Fifth Amendment rights.

The request for the search warrant here obviously constitutes a request to make an intrusion to look for mere evidence.

Crim. R. 41.(B) authorizes the issuance of a search warrant for

"(1) evidence of the commission of a criminal offense."

It is difficult to reconcile this with the Ohio law that a search warrant in Ohio could not justify an intrusion to look for mere evidence except as considered with relation

to R. C. 2933.21 *et seq.* A copy of which is attached as an exhibit hereto. This constitutes the substantive law with reference to the issuance of a search warrant and provided authority with reference to the issuance of a search warrant. It provides authority to a judge to issue a search warrant and specifies what items may be searched for and seized. It does not authorize a warrant for the search for "evidence relating to the commission of a crime or crimes." Under Article 4, Section 5, the Ohio Constitution provides:

"(B) The Supreme Court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right."

It is elementary that a court cannot enlarge or grant jurisdiction or authority to a court that it does not otherwise possess. It is the legislature under Article 4 of the Ohio Constitution that establishes the authority and jurisdiction of the Common Pleas Court and all trial courts. While the General Assembly has granted authority to judges to issue search warrants for contraband (See R. C. 2933.21), it does not authorize the search for evidence as requested herein. This court does not believe that the said Rule 41 was intended to authorize an intrusion, for example, into the home of one citizen in search of items that may be used to either charge or prosecute another person for the commission of a criminal offense.

The substantive law as contained in the revised code obviously does not authorize any such intrusion.

If it be contended that Rule 41 authorizes a search for items not authorized by R. C. 2933.21 *et seq.*, it is in that respect invalid.

However, the court is not satisfied that Rule 41 was intended a search for any items other than as specified in the Revised Code section.

The court holds that a search warrant may not validly be issued solely to attempt to find evidence relating to the commission of a criminal offense.

In view of the foregoing, the court finds that the search warrant was fatally defective and invalid, that if valid the execution of it as contrary to law and also invalid, and that

38

the motion to suppress must be and is hereby granted and the articles taken in the said search on November 4, 1976, in addition to those taken in the search of October 28, 1976, must be returned and may not be used.

*Motion to suppress granted.*

## EXHIBIT A

## AFFIDAVIT FOR SEARCH WARRANT

1. ROBERT V. HOUSEL, being first duly sworn deposes and says that he is an Assistant County Prosecutor assigned to investigate the conduct of Albert S. Porter, County Engineer, and employees of his office, as such conduct may constitute criminal activity.

2. Affiant further states that pursuant to Ohio Revised Code, Section 3517.10, Albert S. Porter as a candidate for County Engineer was required to file and did file "Campaign Committee Finance Report" for two committees to wit:

    1) County Engineer's Committee

    2) Porter for Engineer

Affiant further states that Committee No. 1 above referred to listed cash contributions from members for the period January 1, 1976, thru October 13, 1976, in the amount of $51,181.37.

3. Affiant further states that pursuant to Ohio Revised Code, Section 102.02, Albert S. Porter as a candidate for County Engineer, was required to file and did file a Financial Disclosure Statement listing the source of each gift worth $500.00 or more received by him, in his own name, or by any other person for his use or benefit during calendar year 1975 as "None." Said Financial Disclosure Statement was received by the Ohio Ethics Commission on April 15, 1976 for filing.

4. Affiant further states that testimony presented to the Grand Jury and other evidence in his possession discloses payments to Albert S. Porter, checks drawn upon the "County Engineers Committee" account at Union Commerce Bank, Cleveland, Ohio the following checks to wit:

| CK. NO. | DATE | AMOUNT |
|---------|------|--------|
| 4103 | 5-21-74 | $25,000.00 |
| 4219 | 12-13-74 | 35,000.00 |
| 4313 | 7-2-75 | 30,000.00 |
| 4382 | 10-31-75 | 20,000.00 |
| 4433 | 12-26-75 | 10,000.00 |

5. Affiant further states that Albert S. Porter appearing as a witness before the Grand Jury testified that said amounts above referred to were used to purchase "bearer bonds" for the benefit of the members of the Committee, the employees of his office. (See attached photocopies of Grand Jury Transcript.)

6. Affiant further states testimony of Albert S. Porter and Gladys C. Helmund, the Administrative Assistant was that these bonds were in the safe in the County Engineers Office, and that pursuant to subpoenas and the execution of a search warrant, bearer bonds, State of Ohio, dated in 1970 in the face amount of $60,000.00 and County of Geauga dated 1975 in the face amount of $8,000.00 have been recovered and are in the possession of the affiant. Affiant further states that said County of Geauga bonds were purchased in the name of Albert S. Porter, and that interest on coupons number 1 was paid to his daughter Carol S. Porter and deposited to her account No. 4475784 at Union Commerce Bank on June 22, 1976 in the amount of $320.82.

7. Affiant further states that the efforts to secure all bonds or securities and records pertaining thereto, in the possession or control of Albert S. Porter and/or Gladys C. Helmund have been unsuccessful despite court orders and assurances by both parties that they are in the safe in the County Engineers Office and will be produced.

8. Affiant further states that on October 28, 1976, while assisting in executing a search warrant at the office of County Engineer, he saw, cash, a list captioned—County Engineers Committee—Bonds, sealed envelopes with cash and slips of paper therein, and other records and papers all relating to the County Engineers Committee.

9. Affiant further states that all funds in the County Engineers Committee are collected or contributed from em-

ployees each payday in individual envelopes and transported from County Engineers' Yards to the offices for deposit to the account at Union Commerce Bank, or elsewhere or retained in cash in the office safe.

10. Affiant further states that based upon evidence in his possession and evidence presented to the Grand Jury, there is reasonable grounds to believe and he does believe that crimes have been committed to wit: violations of Ohio Revised Code, Sections 102.02 *et seq.*; 2913.02; 2921.13; 2921.41; 2921.43 and 3517.13.

11. Affiant further states that he believes and has good cause to believe that evidence relating to the commission of crime or crimes violating the above referred to statutes is contained in the safe or safes in the office of the County Engineers, in the form of books, records, papers, envelopes, cash and any and all books, records, papers, envelopes, cash, relating to the County Engineers Committee.

12. Wherefore affiant states that a warrant should be issued for a search of any safe or safes to be found in the office of County Engineer, Standard Building, Cleveland, Ohio, that an inventory be made thereof and receipt given to the person found in charge thereof and that any and all books, records, papers, cash without limit and relating to deposits, investments, employee contributions and all other items of whatever kind and nature he seized and returned to this Court, so as not to be concealed or removed.

13. Affiant further states that this warrant should be executed in the day season.

Robert V. Housel
_____
AFFIANT

SWORN to before me and subscribed in my presence this 4th day of November, 1976.

David F. Matia
_____
JUDGE, COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO