THE STATE, EX REL. THE OHIO BELL TELEPHONE COMPANY, APPELLANT, *v.* WILLIAMS, JUDGE, APPELLEE.

[Cite as State, ex rel. Ohio Bell, v. Williams (1980), 63 Ohio St. 2d   51.]

(No. 79-1443—Decided July 2, 1980.)

52

*Messrs. Porter, Wright, Morris & Arthur, Mr. James S. Monahan, Mr. Joseph W. Ryan, Jr.,* and *Mr. Howard R. Besser,* for appellant.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. James E. Phillips,* for appellee.

LOCHER, J. The central issue before this court is whether the Court of Common Pleas properly directed the telephone company, a non-party to an *ex parte* hearing, to aid law enforcement officials with technical assistance necessary for the implementation of a pen register to investigate a continual course of alleged criminal activity, which there was probable cause to believe was being committed over telephone lines owned, operated and exclusively controlled by appellant.[1]

A pen register only records the number dialed on a particular telephone. The United States Supreme Court, in describing the mechanics of pen registers in *United States* v. *New York Telephone Co.* (1977), 434 U.S. 159, at page 167, stated:

"***Pen registers do not 'intercept' because they do not acquire the 'contents' of communications***. Indeed, a law enforcement official could not even determine from the use of a pen register whether a communication existed. These devices do not hear sound. They disclose only the telephone numbers that have been dialed—a means of establishing communication. Neither the purport of any communication between the caller and the recipient of the call, their identities,

---

[1] The finding of the existence of probable cause is not contested herein.

nor whether the call was even completed is disclosed by pen registers. Furthermore, pen registers do not accomplish the 'aural acquisition' of anything. They decode outgoing telephone numbers by responding to changes in electrical voltage caused by the turning of the telephone dial (or the pressing of buttons on push-button telephones) and present the information in a form to be interpreted by sight rather than by hearing."

Furthermore, a pen register is not a wiretap, and any questions concerning violations of the judicially recognized expectations of privacy and violations of Fourth Amendment protections are not applicable to pen registers. The United States Supreme Court, in *Smith* v. *Maryland* (1979), 442 U.S. 735, 61 L. Ed. 2d 220, held that the installation and use of a pen register was not a search within the meaning of the Fourth Amendment, and hence no warrant was required.[2]

*I.*

Appellant asserts that the Court of Common Pleas lacked the subject-matter jurisdiction to issue a court order for the installation of a pen register.

Initially, it is noted that R. C. 2931.03 reads as follows:

"The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas."

The order which is at issue at bar is directed at an offense which is within the ambit of R. C. 2931.03.

Furthermore, Crim. R. 41(B) grants the court inherent authority for the issuance of the warrant herein obtained. Crim. R. 41(B) provides that a search warrant may be issued to search and seize "(1) *evidence* of the commission of a

---

[2] We note that, even though it was not mandatory to obtain a search warrant, it is a good procedure to obtain a warrant in instances similar to the cause at bar for several reasons. Initially, the police, by submitting the issue of probable cause to a neutral magistrate, additionally safeguard the telephone company's privacy. Secondly, it is beneficial to obtain an order providing for a specific length of time for which the pen register is to be used so that the company can be compensated at the prevailing rates. Lastly, the obtaining of a court order insulates the telephone company from any criminal or civil liability for the installation of a pen register upon a customer's telephone line.

criminal offense; or (2) contraband, fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed." (Emphasis added.)

Fed. R. Crim. P. 41(b) provides that a search warrant may be issued to search and seize "* * *(1) any *property* that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense* * *." (Emphasis added.)

The Ohio rule encompasses the broader term *"evidence,"* whereas the federal rule includes only the term *"property."*

The United States Supreme Court, in *New York Telephone Co., supra,* determined that the definition of "property" in Fed. R. Crim. P. 41(h)[3] is not exclusive. The court, at page 169, stated:

"* * *[Fed. R. Crim. P. 41(b)] is broad enough to encompass a 'search' designed to ascertain the use which is being made of a telephone suspected of being employed as a means of facilitating a criminal venture and the 'seizure' of evidence which the 'search' of the telephone produces. Although Rule 41(h) defines property 'to include documents, books, papers and any other tangible objects,' it does not restrict or purport to exhaustively enumerate all the items which may be seized pursuant to Rule 41. Indeed, we recognized in *Katz* v. *United States,* 389 U.S. 347 (1967), which held that telephone conversations were protected by the Fourth Amendment, that Rule 41 is not limited to tangible items but is sufficiently flexible to include within its scope electronic intrusions authorized upon a finding of probable cause. 389 U.S., at 354-356, and n. 16. See also *Osborn* v. *United States,* 385 U.S. 323, 329-331 (1966)."

Accordingly, we also hold that the Court of Common Pleas had the inherent authority pursuant to Crim. R. 41(B) to issue a warrant for intangible objects, especially since Crim. R. 41(B) provides for warrants for tangible objects upon the showing of probable cause. See, also, *Michigan Bell Telephone Co.* v. *United States* (C.A. 6, 1977), 565 F. 2d 385.

---

[3] The definition of "property" in Fed. R. Crim. P. 41(h) is identical to that same term as defined in Crim. R. 41(F).

Crim. R. 57(B) further supports our reading of Crim. R. 41(B) to include intangibles. Rule 57(B) reads as follows:

"If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists."

In addition to the foregoing, the court order instructing appellant to assist the law enforcement officials installing the pen registers can be simply read as an order for appellant to do what it already has a duty to undertake pursuant to Ohio Adm. Code 4901:1-3-12(B). Rule 4901:1-3-12(B) reads as follows:

"Whenever a telephone or telegraph company has reasonable cause to believe that telephone or telegraph facilities are being used in the furtherance of gambling, *it shall be the duty of such telephone or telegraph company to immediately make an investigation of the use of said equipment and facilities* and immediately thereafter to make a report in writing to this Commission and to the local law enforcement authority of all facts relating thereto." (Emphasis added.)

For the foregoing reasons we hold that this proposition of law is without merit.

## II.

Appellant further asserts, in essence, that the Court of Common Pleas lacked personal jurisdiction over the non-party appellant, and, therefore, the order of October 11, 1978, directing appellant to assist in the installation of a pen register violates the due-process requirements. Appellant contends that there are due-process rights involved, since it was not given notice of or a right to be heard at the *ex parte* hearing.

Initially, it is noted that the issuance of the order directing appellant to assist in the installation of a pen register was essential to the fulfillment of the purpose—to gather evidence of those connected with a gambling operation.

As a practical matter, it is necessary for the telephone company to assist in the installation of pen registers. The federal appellate court, in *Southern Bell Tel. & Tel. Co.* v. *United States* (C.A. 5, 1976), 541 F. 2d 1151, realized the need for the telephone company's technical assistance in this matter

in order to prevent untrained police personnel from tampering with phone lines on a trial and error method. The court, at page 1153, fn. 10, stated that it was necessary for the company to assist "***[i]n order to prevent disruption of telephone lines and damage to telephone company property which might result from the unassisted installation of a pen register by a Government agent possibly untrained or unfamiliar with the operation or maintenance of***[the company's] electronic switching systems."

The Court of Common Pleas has the inherent authority to order appellant's assistance in this matter. Ohio Courts of Common Pleas, being trial courts of general jurisdiction with a combination of legal and equitable powers, have the authority to order appellant to assist in the implementation of a pen register order which is in the nature of a warrant.

In a different but analogous fact pattern, the United States Supreme Court, in *Zurcher* v. *Stanford Daily* (1978), 436 U.S. 547, at page 560, stated:

"***We do hold, however, that the courts may not, in the name of Fourth Amendment reasonableness, forbid the States from issuing warrants to search for evidence simply because the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement."

Applying the *Zurcher, supra,* analysis to the instant cause, appellant's assertion concerning the lack of the court's personal jurisdiction over it is misdirected in that search warrants are directed at places or things rather than at persons. Therefore, we hold that this proposition of law is also without merit.[4]

---

[4] Interestingly, we note that telephone companies routinely install pen registers on their customers' lines for their own business purposes even without a finding of "probable cause" or a court order. In *New York Telephone Co., supra,* the court, at page 174, questioned the rationale of the telephone company for bringing suits of the nature as that brought herein when it stated:

"***[I]t can hardly be contended that the Company, a highly-regulated public utility with a duty to serve the public, had a substantial interest in not providing assistance. Certainly the use of pen registers is by no means offensive to it. The Company concedes that it regularly employs such devices without court order for the purposes of checking billing operations, detecting [toll] fraud and preventing violations of law."

*III.*

Appellant, in its final proposition of law, asserts that "[a] writ of prohibition is the proper remedy where the court's actions amount to an unauthorized usurpation of judicial power."

A writ of prohibition is an extraordinary remedy which may issue only when the following three conditions have been satisfied: (1) the court or officer against whom the writ is sought must be about to exercise judicial or quasi-judicial power; (2) the intended exercise must amount to an unauthorized usurpation of judicial power; and (3) it must appear that a refusal to issue the writ would result in injury for which there is no adequate legal remedy. *State, ex rel. D. P. & L. Co.,* v. *Kistler* (1979), 57 Ohio St. 2d 21, 22; *State, ex rel. Ocasek,* v. *Riley* (1978), 54 Ohio St. 2d 488, 489; *State, ex rel. Northern Ohio Telephone Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6, 8.

In accordance with the rationale previously discussed herein, we note that there was no unauthorized usurpation of judicial authority. Therefore, appellant's final proposition of law is overruled.

For the reasons stated above, we hold that the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MILLER, O'NEILL, SWEENEY and HOLMES, JJ., concur.

CELEBREZZE, C. J., concurs in the judgment only.

W. BROWN, J., concurs in the syllabus and judgment but dissents from Part III of the opinion.

MILLER, J., of the Third Appellate District, sitting for HERBERT, J.

O'NEILL, J., of the Seventh Appellate District, sitting for P. BROWN, J.

WILLIAM B. BROWN, J., concurring in the syllabus and judgment and dissenting from Part III.

I dissent from Part III of the majority's opinion because I believe the majority erred in ruling that an action in prohibition was not available to Ohio Bell.

The majority rules that Ohio Bell had no cognizable action

58

in prohibition in the Court of Appeals for the sole reason that it failed to demonstrate the trial court's usurpation of judicial power. However, Ohio Bell's failure to demonstrate the above usurpation arises from its failure to convince both the Court of Appeals and this court on the merits that either subject-matter jurisdiction or personal jurisdiction of the trial court was lacking. Since Ohio Bell's challenge to at least the subject-matter jurisdiction of the trial court was more than insubstantial, we should rule that its action in prohibition was cognizable. The majority's ruling to the contrary is confusing since it would imply that whenever a relator loses such an action in prohibition for reason that its jurisdictional argument on the merits is rejected, then that relator had no cognizable action to begin with. Thus, while I agree that Ohio Bell's arguments in the Court of Appeals should have failed, I think that its action in prohibition was cognizable for reason that Ohio Bell's claim was not insubstantial.