OPINION
The State of Ohio appeals pursuant to Crim.R. 12(J) the trial court's decision to suppress evidence obtained by police during the execution of a search warrant.
The facts giving rise to the issuance of the warrant are set forth in the State's brief and the affidavit for the warrant.
The welfare fraud investigative unit of the Montgomery County Prosecutor's office received a complaint that Sheryl Jefferson was receiving welfare benefits for herself and her children while she lived with Frederick L. Melton. Defendant had been receiving public assistance in the form of food stamps and aid from the Temporary Aid for Needy Families program since May of 1993. She maintained eligibility for this program by asserting, in writing, to the Montgomery County Department of Human Services, that she and her children had lived alone at 5286 Osceola Drive since June 12, 1995. Id. On April 19, 1995 Melton was picked up by the Trotwood Police Department for an outstanding warrant and at that time Melton listed his address as 5286 Osceola. In December of 1995, Melton filed a complaint with the Trotwood Police Department and reported 5286 Osceola as his home address. Id. The same address was listed on his Ohio's driver's license issued May 31, 1996 and on the title for a car purchased in June of 1996. From May 12, 1996 to February 10, 1997 Melton worked for the Veterans Medical Center and reported 5286 Osceola to be his home address.
The leasing agent for 5286 Osceola had stated that Melton had lived there in the past but was not listed on Defendant's recent Section 8 lease. The leasing agent also stated that on May 15, 1997 she became certain Melton was living with Defendant because Defendant accused her of having someone watching "their" house. Surveillance from the investigative unit also revealed a man fitting Melton's description at 5286 Osceola on April 29, May 9, and May 12, 1997.
The affidavit stated that the rules and regulations of welfare required recipients to completely and accurately report their living arrangements, and that there was probable cause to charge Defendant with theft. In order to gain further evidence to support this charge a search of the house was required for "photographically recording or seizing items that unequivocally establishes where they actually live."
Based on this affidavit, Judge James Manning issued a Search Warrant on May 16, 1998 of Defendant's residence at 5286 Osceola Drive and the curtilage. The warrant authorized a search for:
Documents, clothing, personal effects and any items that are maintained or fall within the class of items or articles normally found where a person has established residence, said items appertaining to Frederick L. Melton, and any other items showing that residence to be the domicile of Frederick L. Melton.
On May 19, 1997, Ware and Codispoti, along with several other welfare fraud investigators, executed the search warrant at Defendant's home. (Tr. 8, 12). Officer Ware, who has sixteen years experience with the office, videotaped the search. (Tr. 12, 20).
As shown in the inventory attached to the warrant, the following items were seized during the search: statement from Emergency Medical Associates; check order form from the Day-Air credit union; check from Day-Air; bill stub for cable in the name of Fred Wells; pay stub from Wal-Mart; notice from Leader National Insurance Company; letter from Advantage Financial Service; letter to Fred Wells; letter from Omnivision; statement from Heartland Federal Credit Union; Just For Feet sales receipt; rent notice from Ora Butler; four letters from Lowes; notice from Wright Patterson Air Force Base; letter from Miami County; V.A. patient data card; Ohio ID; payment agreement for Montgomery County District One Court; three Western Union receipts; letter from the Federal Retirement Investment Board; insurance policy from TIG Premier; unopened letter from Michigan; letter from State Farm; security agreement from National Auto Credit; auto insurance policy from TIG Premier; letter from the Ohio Bureau of Motor Vehicles; P.O. Box fee notice; and a letter to Mr. and Mrs. Fred Melton. (Tr. 5-6, warrant).
After reviewing the items recovered from executor of the warrant, Ms. Jefferson was indicted by the Montgomery County Grand Jury upon four counts of welfare fraud. In granting the defendant's suppression motion the trial court explained at length:
R.C. 2933.21 provides that "A judge of a court of record may, within his jurisdiction, issue warrants to search a house or place" and then lists in subsections (A) through (F) items that may be searched for. A review of the subsections reveals that only subsection (B) could apply to the facts in this case. Subsection (B) states as follows:
 For weapons, implements, tools, instruments, articles or property used as a means of the commission of a crime, or when any of the objects or articles are in the possession of another person with the intent to use them as a means of committing crime.
Subsection (B) paraphrased allows for the search and seizure of personal property used as a means of the commission of a crime, or personal property possessed by another person with the intent to commit a crime. Id.
The items requested to be seized in this warrant are "[d]ocuments, clothing, personal effects, and any items that are maintained or fall within the class of items or articles normally found where a person has established residence, said items appertaining to Frederick L. Melton." The crime alleged to have been committed is Theft by Deception, or Welfare Fraud, a violation of R.C. 2913.02, and is alleged to have been committed by the Defendant Sheryl L. Jefferson. It is not a crime for Frederick L. Melton to live with a welfare recipient. The alleged crime in this case is that Defendant Sheryl Jefferson gave false information on her welfare application. The "documents, clothing, personal effects, and any items that are maintained or fall with the class of items or articles normally found where a person has established residence" may be evidence that Mr. Melton lives at 5286 Osceola Drive, but cannot be said to be "property used as a means of the commission of a crime," or being held "with the intent to use them as a means of committing a crime." Therefore, the property to be seized does not fall within the parameters of property allowed by R.C. 2933.21.
This court is aware that Crim.R. 41(B) authorizes the issuance of a search warrant for "the evidence of the commission of a criminal offense." However, the substantive law which provides authority for issuance of a search warrant is R.C. 2933.21 which, as discussed above, does not authorize a search warrant for the search for "evidence relating to the commission of a crime or crimes." See, State v. Porter (1977), 53 Ohio Misc. 25,37. The Ohio Constitution provides: "The Supreme Court shall prescribe rules governing practice and procedure in all courts of the state, which rulesshall not abridge, enlarge, or modify any substantiveright." Ohio Const., Art. 4, § 5(B) (emphasis added). Therefore, the Criminal Rules cannot expand authority for search warrants beyond that allowed by the legislature in R.C. 2933.21. In other words, the limitation in the statute that the items listed in a search warrant must be "property used as a means of the commission of a crime," or those being held "with the intent to use them as a means of committing a crime," is the prevailing law.
Lastly, the Court also agrees with the reasoning inState v. Porter regarding the overly broad nature of the warrant involved in this case. When the purpose of the warrant is to permit an intrusion of an individual's privacy to merely look for evidence that may be related to a crime that has been or is going to be committed, this essentially constitutes a general or exploratory search. State v. Porter, supra, at 36. These overly broad searches are not permitted as the individual conducting the search would be free "to seek and choose and select such items as he, at the time the search is in progress, decided he wants to take into his possession." Id. The language "any items that are maintained or fall with the class of items or articles normally found where a person has established residence," allows the officer executing the warrantcarte blanche permission to do just that which is feared by a general warrant. The language found in this warrant is overly broad and would allow officers to seize virtually anything they decide to seize.
Based on the foregoing, this Court finds that the search warrant issued in this case did not comply with R.C.2933.21 and was overly broad. Therefore, all evidence discovered as a result of the search will be suppressed. Defendant's motion to suppress filed herein on March 5, 1998, is hereby SUSTAINED.
In its sole assignment of error, the State argues that the trial court's decision to grant the defendant's suppression motion was erroneous under federal and state search and seizure law.
We agree with the State that search warrants may authorize the police to search for "mere evidence" of crime. In State exrel. Ohio Bell v. Williams (1980), 63 Ohio St.2d 51, the Ohio Supreme Court held that trial courts have the "inherent authority" pursuant to Crim.R. 41(B), to issue a warrant to search and seize evidence by a means of a pen register. The court noted that Crim.R. 41(B) provides that a search warrant may be issued to search and seize (1) evidence of the commission of a criminal offense. Id. at 53 and 54.
The United States Supreme Court long ago rejected the idea that search warrants could not be issued to search for "mere evidence." Warden v. Hayden (1967), 387 U.S. 294. In Warden, the Court found that where an officer was in hot pursuit of a defendant, the officer could seize "mere evidence" if there was "probable cause to believe that the evidence sought would aid in a particular apprehension or conviction." Id. at 306-309. In so holding, the Court abandoned the former common law distinction that allowed searches for fruits of crime, instrumentality's of crime or contraband, but banned searches for "mere evidence."Id. at 310. The Court further stated that the rejection of this distinction should also be extended to allow the issuance of search warrants for "mere evidence." Id. at 306-10.
Also R.C. 2933.21(F) provides that the enumeration of certain property and material in this section should not affect or modify other laws for search and seizure. When the Criminal Rules and federal constitutional law are considered, as R.C. 2933.21
directs, search warrants for "mere evidence" of a crime are certainly permitted.
The importance of permitting searches for "mere evidence" is clearly demonstrated in the Ohio cases where warrants for evidence have been routinely upheld on other grounds. For instance, the State may now collect trace evidence such as hair or fibers which would not have been permitted under the former "mere evidence" rule. See, State v. Benner (1988), 40 Ohio St.3d 301, 307,533 N.E.2d 701, 709. Similarly, lifting the ban on "mere evidence" allows the State to obtain warrants for blood to be drawn where there is probable cause to believe evidence of a crime is contained therein. See, State v. Biddings (1988), 49 Ohio App.3d 83,84, 550 N.E.2d 975, 978; citing Schmerber v. California (1966),384 U.S. 757. State v. Pearson (1996), 114 Ohio App.3d 153, 158,682 N.E.2d 1077, 1080.
The State also argues that the trial court erred in finding that the search warrant's command to seize certain described property was overly broad. The State argues that the warrant's language was appropriately tailored for the crime being investigated, to wit, theft of welfare services. In particular, the State argues it was necessary to describe in a general way those items which would plainly indicate that Mr. Melton was a resident of the Osceola residence as opposed to being an occasional visitor.
The Fourth Amendment commands that no warrants shall issue except those "particularly describing the . . . "things to be seized." "The requirement that warrants particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under the warrant describing another as to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v.United States (1927), 275 U.S. 192.
It is more accurate to say the search warrant must be sufficiently definite so that the officer executing it can identify the property to be seized with reasonable certainty.State v. Muldowney (1972), 60 N.J. 594, 292 A.2d 26. See, LaFave, Search and Seizure (3d Ed.) at § 4.6(a).
In Andresen v. Maryland (1976), 427 U.S. 463, 480, the Supreme Court rejected a claim that a warrant was overly broad and found that the documents were reasonably seized under a warrant where a trained special investigator could reasonably have believed the document could be used to support a charge of the crime being investigated. Id. at 483.
Similarly, this Court, in State v. Schlosser (May 24, 1996), Montgomery App. No. 14976 and 14968, rejected the defendant's claim that a search warrant for "all records regarding advertising, promotional or soliciting activities" was overly broad. In so finding, this Court stated that such language was permissible where the crime being investigated was a pervasive scheme permeating an entire operation.
As set out by the Ohio Supreme Court, the appropriate question to ask in the determination of whether warrants are sufficiently particular is whether the "warrants could reasonably have described the items more precisely than they did." State v.Benner (1988), 40 Ohio St.3d 301, 307, 533 N.E.2d 701, 709. InBenner, the Court upheld a search warrant authorizing a search for "fibers and hairs." Id. The Court held that although this language was broad it was not impermissibly broad and it did not authorize a general exploratory search since officers were not authorized to "simply take any item they wanted." Id.
Following Benner, in State v. Wilson, the Eighth Appellate District rejected a defendant's claim that a warrant was overly broad. State v. Wilson (March 20, 1997), Cuyahoga App. No. 69346, unreported. The officers in Wilson were investigating a shooting and robbery, from which the suspect fled and then lived for years under a variety of aliases. Id. at 1. In the investigation of the shooting in Wilson a warrant was issued to search for the defendant's home for "photographs, books, documents, papers, records and other material tending to establish the identity, change of identity and [defendant's] whereabouts." Id., followingBenner, supra.
We agree with the appellant that the warrant could have provided a more particular description of the items to be seized or photographed during the search. The types of documents to be seized or photographed could have been more particularly described. The warrant does restrict the seizure to items "appertaining to Frederick Melton." We cannot say the warrant violated the particularity requirement.
In any event, we cannot say an "objectively reasonable" police officer would have thought this search warrant was invalid because of the particularity requirement.
The United States Supreme Court has decided that the exclusionary rule should not be applied when the officers conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that is subsequently determined to be invalid. United States v. Leon
(1984), 468 U.S. 917, 82 L.Ed.2d 677. Massachusetts v. Sheppard
(1984), 468 U.S. 981, 82 L.Ed.2d 737.
If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. Leon,supra, at 919, quoting United States v. Peltier (1975),422 U.S. 531, 542.
As announced in Leon, supra, exclusion for insufficiency of the warrant is not appropriate where the officer had reasonable grounds to believe that the warrant was properly issued. Where a warrant is so facially deficient that officers cannot reasonably presume it to be valid, or where it is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, exclusion of evidence produced thereby is appropriate. Massachusetts v. Sheppard, supra.
Ohio has adopted the "good faith" exception established inLeon in State v. Wilmoth (1986), 22 Ohio St.3d 251. In its syllabus, the Supreme Court stated:
1. The exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. (United States v. Leon (184), 468 U.S. 897,104 S.Ct. 3405, 82 L.Ed.2d 677, followed.)
2. Where the officer's conduct in the course of a search and seizure is objectively reasonable and executed in good faith, excluding the evidence because the search warrant is found to be constitutionally invalid will not further the ends of the exclusionary rule in any appreciable way.
The appellant's assignment of error is Sustained.
The judgment of the trial court is Reversed and Remanded for further proceedings.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Lynda K. Ashbery
Arvin S. Miller
Hon. David Sunderland