**Damon Jerome RICHARDSON,
Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–90–0349–CR.

Court of Appeals of Texas,
Amarillo.

Nov. 21, 1991.

Richard L. Wardroup, Lubbock, for appellant.

Travis Ware, Dist. Atty., Michael West, Asst. Dist. Atty., Lubbock, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellant Damon Jerome Richardson brings this appeal from his conviction of the offense of engaging in organized criminal activity. The punishment, assessed by the jury, was set at life confinement in the Texas Department of Criminal Justice, Institutional Division and, in addition thereto, a fine of $10,000.

In twenty points of error, appellant asserts error in the trial court below. We shall address appellant's points of error seriatim as he has grouped them in his argument.

The first overt act alleged in the indictment was that Charles Junior Patterson, with the knowledge of appellant, was in possession of cocaine. In his first point, appellant contends the evidence was insuf-ficient to support appellant's conviction, because the confiscated bags of cocaine were not identified as having come from the apartment of Charles Junior Patterson.

In reviewing the sufficiency of the evidence, it must be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Carlsen v. State*, 654 S.W.2d 444, 448–49 (Tex.Crim.App.1983) (opinion on State's motion for rehearing).

■ Police Officer Gary Lough testified that the bags were taken during a search conducted at 1109 43rd Street, Apartment D in Lubbock. Both Officer Gary Lough and Officer Kent Radney testified that when the search warrant was executed, Charles Junior Patterson occupied the apartment. Viewed in the light in which we must view it, the evidence was sufficient to justify a rational trier of fact in concluding that the cocaine was from the apartment of Charles Junior Patterson. Appellant's first point of error is overruled.

In his second point of error, appellant asserts that the trial court erred in overruling his objections to the introduction of the confiscated bags containing cocaine because the chain of custody was not established.

■ Each person who had control of the bags testified as to the chain of custody. Each of these persons testified that the bags were the ones they had possessed or appeared to be the same. That being so, any objection appellant may have had concerning the chain of custody goes to the weight to be given the evidence and not its admissibility. *Mendoza v. State*, 552 S.W.2d 444, 448–49 (Tex.Crim.App.1977) (citing *Norris v. State*, 507 S.W.2d 796 (Tex.Crim.App.1974)); *Bueno v. State*, 501 S.W.2d 339 (Tex.Crim.App.1973). That decision is a matter within the special province of the jury as the trier of fact and its resolution is binding upon this appellate court. Appellant's second point of error is overruled.

In his fourth and fifth points of error, appellant asserts that the trial court erred in overruling his motion to suppress evidence against him obtained by use of a pen register. A pen register is a device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the telephone dial is released. It does not overhear oral communications and does not indicate whether calls are actually completed. *See United States v. New York Tel. Co.*, 434 U.S. 159, 161 n. 1, 98 S.Ct. 364, 366 n. 1, 54 L.Ed.2d 376 (1977).

In his argument, appellant posits that article 18.21 of the Texas Code of Criminal Procedure, which authorizes the use of pen registers, neither specifically requires nor abandons a requirement of probable cause for issuance of an order to install a pen register. He argues that the use of such a register is a "search" within the purview of article 1, section 9 of the Texas Constitution,[1] and issuing an order allowing the use of such a register without requiring a showing of probable cause violates that section. Concomitantly, he further asserts that the affidavit in support of the application for the placement of the pen register was insufficient to show probable cause.

In the seminal case of *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Court was presented with the question whether the installation and use of a pen register constituted a "search" within the purview of the Fourth Amendment to the Federal Constitution. In that case, without obtaining a search warrant, the police had the telephone company install a pen register at its central office to record the numbers dialed from a telephone at Smith's home. Based upon information obtained as a result of the use of the pen register, the police obtained a warrant to search Smith's home. As a result of that search, evidence was obtained which incriminated Smith and aided in his conviction of robbery.

In affirming Smith's conviction, the Supreme Court stated that a person had no reasonable expectation of privacy in the numbers dialed from his telephone, as this information was received by the telephone company. Therefore, the Court concluded, use of a pen register is not a "search" within the purview of the Fourth Amendment, hence, no search warrant was required.

En route to its holding, the Court noted Smith's contention that the fact that the telephone in question was installed in his house demonstrated the reasonable expectation of privacy requisite to assert Fourth Amendment rights. However, it said, while that conduct might have been calculated to keep the *contents* of his conversations private, it could not have been calculated to preserve the privacy of the numbers he called. That follows, the Court continued, because telephone users typically know that they must convey numerical information to the phone company to complete a call and that the company has facilities to, and does, record that information for a variety of legitimate purposes. That being so, the Court commented, "it is too much to believe" that telephone subscribers harbor any general expectation that the numbers they call will remain secret. Even if they did so, the Court added, that expectation was not one that society was prepared to recognize as reasonable. *Id.*, 442 U.S. at 743–44, 99 S.Ct. at 2582.

Recognizing that the rationale of the *Smith* case and other federal decisions of like ilk are not helpful to his cause, as well as the rule that the states are free to accept or reject federal holdings and to set for themselves such standards so long as the state action does not fall below the minimum standards provided by the federal constitutional protections, appellant argues section 9 imposes a more restrictive standard of protection than the Fourth Amendment and the federal decisions are not applicable here. However, in *Brown v. State*, 657 S.W.2d 797 (Tex.Crim.App.1983), the Court, when presented with a similar con-

---

**1.** Later references to section 9 in this opinion are references to that section of Article 1 of the

Texas Constitution.

tention, held that it would "decline his [appellant's] invitation to attach to Article I, Section 9 of our Texas Constitution a more restrictive standard of protection than that provided by the Fourth Amendment." *Id.* at 798. In *Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), "Article I, Section 9 of the Constitution of this State, and the Fourth Amendment of the Federal Constitution are, in all material aspects, the same." The Court again refused to hold that section 9 imposed a more restrictive standard than did the Fourth Amendment. *Id.* at 164. Again, in *Bower v. State,* 769 S.W.2d 887 (Tex.Crim.App.1989), in response to a contention that section 9 imposes a more restrictive standard of protection than does the Fourth Amendment, the Court stated, "We have refused such requests in the past and we do so again." *Id.* at 905. *See also May v. State,* 780 S.W.2d 866, 869 (Tex.App.—Dallas 1989, pet. ref'd).

■ Implicitly, if not explicitly, those holdings suggest that federal decisions, such as the *Smith* case, construing the dimensions of the Fourth Amendment determining whether a probable cause showing is required, should be of considerable persuasive value. In this case, we find the *Smith* Court's reasoning as to the lack of a subjective or societal reasonable expectation of privacy in the numbers called from a telephone seems compelling. This is particularly true since the calls in question here were made from a Lubbock County jail telephone.

Accordingly, we hold that the use of a pen register is not a "search" within the purview of article 1, section 9 of the Texas Constitution. Therefore, article 18.21 of the Code of Criminal Procedure is not unconstitutional for failing to require probable cause. Appellant does not contend that the State failed to comply with the requirements of that article. Points of error four and five are overruled.

In point of error eighteen, appellant asserts that the trial court erred in overruling appellant's motion to suppress evidence seized as a result of a wire intercept. This is so, he argues, because the purported probable cause in the affidavit in support of the application for wire intercept relied upon information from a number of confidential informants "with unknown credibility." Corroboration of their reliability, he suggests, depends upon illegally obtained evidence secured by the installation of a pen register, which should not be considered. We disagree. The pen register evidence, as we have held above, was legally obtained. We find no error and overrule point of error eighteen.

■ In his sixth point of error, appellant contends that the trial court erred in overruling appellant's motion to suppress evidence seized as a result of a wire intercept. That is so, he argues, because the supporting affidavit of Jerry A. Randall is insufficient to show the probable cause required under article 18.20 of the Texas Code of Criminal Procedure for the issuance of a wire intercept. Parenthetically, a wire intercept allows acquisition of the contents of a communication.

It is not necessary to detail the abundant information provided in the 56–page affidavit. In summary, numerous informants gave information about appellant's cocaine distribution operation. Several had close connections with appellant. While several were unproven in their reliability, their information was corroborated by other information obtained. Much information of appellant's involvement in cocaine distribution resulted from undercover police operations.

There was sufficient probable cause without the evidence obtained through the pen register. We have held that the evidence acquired by the pen register was lawfully obtained. The pen register evidence corroborated much of the information supplied by the informants. While there was sufficient probable cause without the pen register evidence, it provided even more evidence of appellant's involvement in cocaine distribution. Point of error six is overruled.

In points of error three, seven, eight, nine, ten, eleven and sixteen, appellant urges that there is insufficient evidence to support appellant's conviction, the trial

court erred in overruling various motions to suppress, and the trial court erred in admitting certain evidence. These errors are based upon the argument that the evidence resulted from the illegal operation of the wire intercept and pen register.

We have already concluded that the use of the wire intercept and pen register was legal. Therefore, points of error three, seven, eight, nine, ten, eleven and sixteen are overruled.

In points of error twelve, seventeen and twenty, appellant asserts that the trial court erred in allowing the State to provide transcripts of monitored conversations while the tapes were played before the jury.

■ Appellant argues that the tapes themselves were the best evidence of the conversations monitored, and "by placing a transcript in the hands of the jury while they listened to the tape, the transcript becomes a substitute for the tape," *i.e.*, such action violated Rule 1002 of the Texas Rules of Criminal Evidence, commonly known as the Best Evidence Rule. During the time the transcripts were provided to the jury, the tapes themselves were played. That was sufficient to satisfy Rule 1002 and we find no reversible error in the trial court's action. Point of error seventeen, which makes specific reference to Rule 1002, is overruled.

■ Appellant also contends that the action of the trial court in allowing the State to provide transcripts of the taped conversations was error in that (1) the persons who transcribed the conversations had no personal knowledge of the conversations, and (2) such action violated article 36.28 of the Texas Code of Criminal Procedure. Article 36.28 provides that if the jury disagrees as to the statement of any witness, they may have read to them the disputed part of the testimony from the court reporter's notes or if there is no court reporter or his notes cannot be read to the jury, the witness may be directed to repeat his testimony as to the point in dispute. Tex. Code Crim.Proc.Ann. art. 36.28 (Vernon 1981).

We disagree with appellant's contentions. The transcripts were not admitted into evidence, they were only used during the playing of the tape as an aid to the jury. In such circumstances, the use of transcripts is proper. *Garrett v. State,* 658 S.W.2d 592, 593–94 (Tex.Crim.App.1983). Points of error twelve and twenty are overruled.

In points thirteen and fourteen, appellant asserts that the trial court erred in overruling his motions to suppress evidence seized as a result of a wire intercept because the person monitoring the wire intercept of the telephone calls was not a Texas Department of Public Safety Agent and he was not authorized by the Texas Department of Public Safety, in violation of article 18.20 § 5(a) and (b) of the Texas Code of Criminal Procedure.

■ Glen Osborn was part of a team that monitored the calls in question. He was neither a DPS agent nor authorized by the DPS to operate the wire intercept.

However, art. 18.20 § 5(a) states in part, "The Department of Public Safety may be assisted by an investigative or law enforcement officer in the operation and monitoring of an interception of wire, oral, or electronic communications, provided that a commissioned officer of the Department of Public Safety is present at all times." Tex. Code Crim.Proc.Ann. art. 18.20 § 5(a) (Vernon Supp.1991).

Glen Osborn testified that DPS Officers Jaime Lopez and Alan Alexander monitored the calls along with Glen Osborn. He further testified that there were always two of the three persons present during the monitoring. Therefore, a DPS officer was present at all times, which is sufficient to comply with article 18.20 § 5(a). Point of error thirteen is overruled.

In his fourteenth point, appellant posits that Glen Osborn was not authorized by the Texas Department of Public Safety to monitor intercepting devices, and, since he monitored some calls, Texas Code of Criminal Procedure art. 18.20 § 5(b) was violated. That section states, "The director shall designate in writing the *commissioned officers of the Department of Public Safety*

who are responsible for the possession, installation, operation, and monitoring of electronic, mechanical, or other devices for the department." (Emphasis added). Tex. Code Crim.Proc.Ann. art. 18.20 § 5(b).

■ There is no requirement that the officers who might assist the responsible designated commissioned officers of the DPS be designated in writing. Since one of the DPS officers, Jaime Lopez or Alan Alexander, designated in writing as being responsible was always present, art. 18.20 § 5(b) was not violated. Point of error fourteen is overruled.

■ In point of error nineteen, appellant urges that the trial court erred in overruling appellant's motion to suppress evidence seized as a result of a wire intercept. That follows, he contends, because the affidavit in support of the application for wire intercept was insufficient to show that other investigative procedures had been tried and appeared unlikely to succeed. Article 18.20 § 9(a) allows a judge to authorize "interception of wire, oral, or electronic communications if the judge determines from the evidence ... (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous if tried." Tex.Code Crim.Proc.Ann. art. 18.20 § 9(a) (Vernon Supp.1991).

The affidavit in support of the application for wire intercept was sufficient to establish that other investigative procedures had been tried and had failed or reasonably appeared to be unlikely to succeed. The affidavit states that procedures such as infiltration by undercover officers, use of informants, and physical surveillance, among others, were unsuccessful or reasonably appeared to be unlikely to succeed.

Infiltration by undercover officers had resulted in seizures of illegal drugs and arrest of persons involved in the street-level distribution of cocaine, but was unsuccessful in infiltration of the upper echelon of appellant's cocaine distribution organization. The affidavit further states that based on the affiant's experience, infiltration into the level of supply or financing of a drug distribution organization is all but impossible, due to an already established network of distribution.

The affidavit reflects that use of informants had been unsuccessful. The confidential informants were neither willing to be identified, nor to testify in court. Most confidential informants were unwilling to cooperate with police officers because of the reputation appellant has for violence.

The affidavit also states that physical surveillance had been successful in gaining information into locations used and as to meetings between associates but had failed to identify their sources of supply or those who may aid in the financing of the drug operation. Surveillance conducted on a long term basis would have jeopardized the investigation because appellant and other involved suspects had experience in recognizing police investigative procedures. Furthermore, surveillance was not practical because appellant was incarcerated in jail and controlled the cocaine distribution by telephone.

While not comprehensive, the foregoing discussion of the content of the affidavit illustrates that the affidavit was sufficient to establish that other investigative procedures had been tried and had failed or reasonably appeared unlikely to succeed. Point of error nineteen is overruled.

■ In point of error fifteen, appellant theorizes that the trial court erred by allowing testimony, over objection, that a witness had recently heard appellant's voice and that the voice was the same as he had heard on the audio tape previously introduced into evidence. However, that point is not supported by argument, authorities, or reference to the record. Under such circumstances, nothing is presented for our review. *Pierce v. State,* 777 S.W.2d 399, 418 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2603, 110 L.Ed.2d 283; *Smith v. State,* 683 S.W.2d 393, 410 (Tex.Crim.App.1984); *Woods v. State,* 569 S.W.2d 901, 905 (Tex.Crim.App. 1978), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981).

In summary, all of appellant's properly presented points of error are overruled and the judgment of the trial court is affirmed.